Your Honor, this is the first case of the morning call, 212-474, Lake County Grading Company, LLC v. Village of Antioch. On behalf of the Village, Mr. Lawrence Molman. On behalf of Lake County Grading, Mr. Bogdan Martinovich. Thank you. Mr. Molman, you may present. Good morning, Your Honor. The central issue in this case is whether the payment provisions of the Public Construction Bond Act are deemed to be part of the surety bonds that were furnished by the developer to the Village of Antioch. It is well established under Illinois law that bonds which are mandated by statute incorporate the language of that statute. This is especially true if the statute specifically states that certain terms are to be deemed part of the bond. In this situation, Newman Homes entered into agreements with the Village of Antioch to construct certain public improvements on two subdivisions. Could I ask a hypothetical, please? Yes. Would you, on behalf of the city, if for some reason the payment portion had been what was iterated and the performance portion was the part that was left out, would you be able to sue the bondsman on a breach of contract for failing to include the performance section in the contract as a matter of law, and thereby not only recover under the portion of the bond that you claim is mandated by law, but you'd also have a four-year statute of limitations because you'd be suing as a breach of contract rather than under the 180 days? Yes. As the obligee under the performance bond, first of all, the performance provisions of the Bond Act are also incorporated by reference into the bonds that were issued by Newman Homes. Second of all, it would be a four-year statute of limitations under, was it, the statute of limitations for us to assert a claim? Yes, that's correct. The important thing here is that counsel for the plaintiff attempts to make a distinction between a payment bond and a performance bond. The Bond Act does not refer to either a performance bond or a payment bond. The requirement for furnishing a bond is stated in the first sentence of Section 1 of the Bond Act. That merely states that for all situations where you have contracts for the construction of public work that exceed $5,000, every contractor must furnish a bond, that's the only term, a bond, with a good and valuable surety. Then the second sentence goes on and states that the municipality can set the amount of the bond, and then the bond must be conditioned upon completion of the work and upon payment of the labor and materials. Then the third paragraph of the Bond Act goes on and says that those completion conditions and the payment conditions are deemed to be parts of the bond, regardless of whether the bond includes those provisions or not. Counsel, I wouldn't take issue with what you're saying, but doesn't Section 2 of the Act also provide specifically the remedy provided in this section is in addition to and independent of any other rights and remedies provided at law or in equity? Counts 2 and 4 alleged of the amended complaint third-party beneficiary contract claims, which are really independent of the action prescribed or specified in Section 2 of the Bond Act. So why, as a matter of law, can they not maintain an independent action? First of all, there's no privative contract between Lake County Grading and the Village of Antioch. So under the AEI music case and other cases where no bond was provided, courts have found that the Bond Act creates a third-party beneficiary relationship between the Newman Homes and Antioch. And that is a requirement that they just get a bond. The only cases where liability has been established against a municipality or a public entity is where no bond was obtained with respect to a public works. We have found no case, and the plaintiff has cited no case, where the public entity has obtained a bond and is still held liable under the Bond Act. Where do you see in Arden and East Peoria that no bond was obtained? Those cases specifically say, because I looked for that after reading your argument, clearly AEI, there's no bond at all, and it said that. But in Arden and East Peoria, it said that there was no payment bond provided. It didn't say whether or not there was any other type of bond provided. It just didn't say. Yes, so I'd love to speculate, but... But it was clear that it said no payment bond was provided, and that led to the relief under a third-party beneficiary in most cases. Right. But it never said that a performance bond or any other type of bond was issued. So you want to shift the burden, then, to fidelity in this case. Let's say that the plaintiff brought the action within 180 days. Yes. Then you would still, as the city, be saying that go after the bondsman. Precisely. Okay, so fidelity is then on the hook for not putting this in as opposed to the city. Exactly. Okay, and even though the statute puts the requirement on the city to put it in the contract, because it says that the political subdivision shall require every contract to have a bond and to have a payment and a performance bond, both. I disagree with that interpretation in the statute. The statute requires that they provide a bond, And then it goes on and says that the bond shall be conditioned upon performance and payment, and that those conditions are deemed to be part of the bond, the bond that is provided by the contractor as a matter of law, whether those provisions are stated in the bond or not. So, therefore, Antioch complied with the Bond Act by requiring Newman to furnish bonds that covered the work. Is there some reason why you didn't third party the bondmaker for its breach of contract, which, according to your argument, was required to include both aspects of insurance or coverage? We, as an obligee, do not have standing to assert a payment bond claim on behalf of a subcontractor or supplier. And we believed at all times that there was no liability to the Village of Antioch, because we did obtain bonds from the contractor that covered the work for which Lake County Grading performed their work. And I believe that there is some limitations as to trying to piggyback claims from other parties who have let their rights expire to try then to have the surety company held liable. All Lake County Grading had to do within 180 days of finishing their work was serve a written notice upon the Village and upon Newman Homes. No notice is required to the surety. Just serve notice that they had a claim and state the amount. That is all that is required. And that would have been taking care of the problem, arguably. But then it has to be a position that third party rights of a subcontractor cannot exist under the circumstance. That's what you're saying, right? Under AEI Music, the third party rights is only that we have to obtain a bond that covers the work, the public work. And we satisfy that requirement. Once we have those bonds in place for $18 million, then all Lake County Grading has to do is exercise their rights under that bond. You cited to the Arden case, right? You cited to the Arden case, I believe. I believe the other side did, yes. I was quoting some brief language. I want to get your response. Arden says, Because the Bond Act is remedial. It's civilly construed to effectuate the General Assembly's intent to protect material money and tradesmen. It goes on to read, Subcontractors are third party beneficiaries of the contract between the public entity and the general contractor. Because as a policy matter, it would be meaningless to read the Bond Act requirements into the contract without reading in third party rights to enforce that statute. Yes, I agree. So that if we obtain no bond from Newman, then Lake County Grading could have a cause of action against us under the third party beneficiary theory. But once we obtain a bond that covers their work, then their rights are protected. So that if they are not paid by Newman, then they can assert a claim under that bond. I understand your point. Again, you're saying it's exclusive then. If they don't follow up under the provisions of the bond, they're out basically, correct? There is no other alternative remedy. Yes. And the Arden case or the other cases, there are two purposes of the Bond Act. One is to protect subcontractors who provide labor and materials. But the other purpose is to protect the taxpayers of the public entity so that they are not obligated to pay claims of subcontractors who are not paid by the contractors. That's a very important purpose. And that's exactly what Lake County Grading is trying to do here, is to have the taxpayers of Antioch pay their claims when they had a valid claim and they had a remedy under the bonds, and they exercised their business judgment not to pursue that remedy in a timely fashion. Does the record reflect whether or not the bondmaker broke down the fees for both aspects of the coverage? In other words, one fee for performance and one fee for payment? That is not in the record, but I represent sureties. Sureties do not charge an extra premium for payment bond coverage. There's only one premium for a bond. Or if two bonds are issued, there's still only one premium. So that does not matter. The sureties, when they underwrite these risks, are underwriting the contractor and their ability to perform and to pay their obligations. Even if the bond doesn't say pay? Even if the bond just says perform, they're underwriting the payment. They know this? Yes, because the sureties are sophisticated. They know the Bond Act. They know the risks that they are undertaking when they write a bond for a contractor on a public works project. But they also know the case law, I'm sure, that says that a surety is not bound beyond the express terms of the bond. But subject to the statutes. There are two elements to establishing the liability of a surety. The four corners, the state and language in the bond, plus the statute, which by law is deemed to be part of the bond, is the statute that requires the issuance of the bond. Did you move to dismiss on the basis that the bondmaker was a necessary party? No, we did not. No, we did not. Did you bring them in and seek indemnification or some sort of contribution? No, we did not. We filed motions to dismiss, motions for summary judgment, believing that it was not our obligation to do that. When you say a rate is based upon the one bond, does the one bond, when the amount is set forth, is the amount that's set forth, is that supposed to cover both the performance and the payment? Or is it supposed to cover only one? Or put another way, if, for instance, it's a million dollar bond, and the performance is going to cost $800,000 and the payment is going to cost $500,000, and the bond's only for a million, what happens to the $300,000 that supposedly somebody is going to be out? I'm not certain whether I fully understand the questions. When there are two separate bonds, they... No, I'll repeat it. The bond amount says a million dollars. Okay. Now, the damages that your client realizes is $800,000 for non-performance. The material men, the subcontractors, their damages for non-payment is $500,000. That's a total of $1.3 million. But the bond's only for a million dollars. Who loses in the $300,000 area? You, the city, or the subcontractors? When sureties are put in the position of excess claims such as that, they would exercise their rights for interpleader, deposit the fund, the million dollars with the court, and say divide it up. Generally, it's done pro rata. So that bond would not be conditioned to bond payment, the full payment to the subs. No.  And there could theoretically be an issue if that bond amount is set too low. But here we have $18 million of bond coverage and a claim of $270,000. So therefore, the amount of the bond is not an issue. The only issue is whether Lake County Grading had rights to assert a claim under that bond and whether they exercised those rights or let them expire. And that's what this case is all about. They admitted that they exercised the business judgment because they wanted to have more business from Newman. They admitted that they understood that Newman was having financial difficulties, such as all these homebuilders were back in that era. I kind of beg to differ. I think the case is really about whose responsibility it is to get this payment bond. And I understand your argument, but I just want to try and hone in on it a little bit more. The statute reads that the city, the municipality, shall require the contractor to supply and deliver a bond. The bond shall be conditioned upon payment and performance. Yes. So you're saying that the city can require the contractor to get a bond that's only conditioned upon performance and then we're supposed to read the payment part into it even though the city didn't require it in the contract. That's exactly what the Illinois legislature said when they enacted the Bond Act. Then that's what this language means. In the third paragraph of the Bond Act, yes, correct. All the municipality had to do was get a bond that covered the work from a good surety company. Then the statute says that if that bond doesn't contain certain language, such as a payment condition, then the statute reads into that bond, that payment provision, and goes on even if the bond is totally silent on that payment condition. And that is consistent with established Illinois law that says wherever a statute requires a bond, the terms and provisions of the statute are considered to be part of the bond. Furthermore, if you refer to Section 71 of the Statement, which was cited by approval in the Mortons of Chicago case, that is squarely on point. It actually goes on and says that when that statute specifically deems certain terms are to be part of the bond, then those terms are in fact part of the bond. So the statute is very clear here that the Illinois legislature said that when a public entity obtains a bond that covers public work, these conditions are part of the bonds, whether the bonds say it or not. And the only requirement under the statute is that Antioch obtain a bond. And no labels are attached to how that bond should be labeled. But once that bond is obtained, those provisions are part of the bond, and then it's up to the claimants to exercise their rights under that bond. Thank you, Counselor. We have time for a rebuttal. Thank you. Mr. Martinovich, you may proceed. Good morning, Your Honor. Good morning. We're here today basically as an exercise of statutory construction of the Act. That's what I believe we're really talking about. And Antioch has, throughout its briefs and this morning, ignored a key provision of the Act, and I just want to address that. As Your Honor has noted, the Act says that the bond shall be conditioned for the completion of the contract for the payment of material used in the work and for all labor performed in the work, whether subcontract or otherwise. And then it goes on to say, and nobody talked about it this morning, each such bond. That's a key term here. Each such bond is deemed to have, and this is a peculiar statute because it puts it in quotes, deemed to basically take the quoted portion of the statute and put it in such bond. In other words, when you have a payment bond, you know, I've been representing Lake County Grade for over 25 years, and I've seen all sorts of arcane bonds. Some just simply say, you know, we'll be responsible for payment and performance, nothing else. And the statutory provision is therefore then right in there to take care of any ambiguity or argument as to what that really means. So it's each such bond. If the legislature wanted to make this any bond or a bond, it would have said so. It wouldn't have said each such bond. Antioch, standing before you this morning, they argue, well, all we have to do is get a bond, and therefore this provision is right in there. The statute specifically says each such bond, referring to the language above, which requires a payment and a performance bond. So contrary to what the... Are you saying that the statute requires essentially two bonds or a combined bond? As long as the statute, as long as the bond says payment and performance, many do, then this language is inserted in that if it's, whether it's there or not, this language is there to take care of any ambiguity. You know, some of these bonds are, the language goes back 200 years. You scratch your head sometimes. And that's what the legislature took care of with respect to this particular... 200 years? Huh? 200 years? Well, some of these bonds, yeah. Some of these bonds are very arcane. Were we a state 200 years ago? No, I don't think we were because the state... I don't think we were. ...was in 1861 or 1853. No, what I meant is the language of some of these bonds are very arcane. They go back forever, and they haven't changed. My experience, anyway, I don't think the courts had that same experience. Counsel, let me ask you this. One of the essential arguments of your opposing counsel, and how do you respond to this, is the village in this case, in good faith, obtained the bond. That's the remedy that your client could have used. So he's saying there is no independent right to proceed as you're proceeding here because once you have the bond in place, that controls. What's your response to that? Well, they don't have a statutory bond. For them to have a statutory bond, they would have had to have had a payment bond. And they didn't. Let's assume that they... Hypothetically, let's assume they had the payment bond. You wouldn't be here. But is there an independent right to maintain an action aside from the Bond Act? The Third Party Act, you're entitled to. You're entitled to a third party cause of action for the failure to provide a payment bond. That's what the cases stand for that have been cited. We have that right, and that's why we're before you, Your Honor. The entire scheme here, if you look, and counsel said, well, there was $18 million, and our claim is only a quarter of a million dollars, and there's plenty of money there. If you read the contract between Newman and the village, it says specifically there will be no surety. You're relieved of the requirement to have a bond of any kind. All expenses are meant to be paid out of the revenue bond that is being raised under the SSA. Why would the legislature say that you or servicemen, material men, laborers, are third party beneficiaries if the bond patently talks in terms of payment? If there was a payment bond here, we wouldn't have a third party cause of action. Our action would be under the bond, or in this set of facts, we'd have additional reasons. Which means that what the legislature said when it said that you have a third party right is implicitly meaning that you have a breach of contract right, not that you have a right under the bond. Correct. If there is no payment bond, we have a right of the third party action. Correct. Shaw said that the contract that didn't mention subs took it out of that third party beneficiary. Do you agree with that holding, Shaw? It seemed to be the holding, Shaw, that because the contract didn't really mention third party, it didn't mention subcontractors at all, that you had to proceed under the Bond Act and the 180 day limitation applied. Well, I disagree with that holding, Your Honor. In this particular case, the contract, the infrastructure agreement, specifically says that subcontractors will be used. It's in the first paragraph of the contract. So to the extent that that might be relevant, it doesn't apply to our facts here. It was always contemplated that subcontractors would be used and it was contemplated that they would be paid solely from the revenue bonds and there wouldn't be any surety posted. And what they did post doesn't cover, doesn't even meet the act. If these subdivision bonds that they did secure were in fact payment bonds, they'd still be violating the act because the bonds were not of sufficient security. If you look at their answer to the Second Amendment complaint, they admit that there aren't sufficient funds to cover all the indebtedness. And there's an affidavit by the Gluge administrator, not part of the Senate Judgment Motion, but as part of the motion to dismiss the Second Amendment complaint, where he says there are no funds left over because of the default of Newman. So there wasn't sufficient money. And secondly, the act requires specifically that all of the work, it says... I thought the infrastructure agreement did mandate Newman to have a bond that would cover whatever was necessary in excess of the SSA funds. Correct. It was a determination. They had to make that determination. But they had to have the bond, though. They had to have a bond to cover the excess. Yeah. They decided what was necessary. They said, well, if we don't have enough money out of the SSA revenue bond, so therefore we may require a performance bond. And it says specifically only performance bond in the SSA agreement. It doesn't say payment. It says specifically performance. And it also has a formula for, well, if you want out of the SSA funds, you can go to the performance bond to complete the work. So they specifically excluded any reference to any payment bond. But the statute requires... So you're saying that Mr. or the Newman Company didn't breach the contract with the city because it got the bond that it agreed to? Newman's breach is irrelevant as far as this case goes. Well, relative, if Newman was required to obtain a bond... Right. ...and the phraseology was only a performance bond, then how could Newman breach the contract with the city relative to the type of bond that it was supposed to procure? Well, it was a city or a village that was supposed to make sure that the bond met. Didn't you just say that the city entered into a contract that required Newman to obtain a bond? To obtain a bond that the village determined was necessary at a later date. The contract said no bond unless we determine that we may need some, and then we'll tell you what it is, and you have to give us 110% of a performance bond. That's all it said, a performance bond. That's what's called for in the agreement. But the statute says, shall be conditioned for all labor performed for the work, not a portion of it that you determine later. They needed a payment bond for the entire project. Otherwise, you're going to have the problems that they experienced. I don't want to belabor the point, but if the legislature wanted to say any bonds are all bonds, they would have used that language instead of such, each such bond. And I don't think you can get away from that. As I said, we've got a very narrow issue, and that's the construction of the statute. I don't see how we get away from each such bond, and Antioch hasn't addressed that issue. You agree the Dovo review applies, correct? Yes, I do, Your Honor. Thank you. Anything else? No. Thank you, counsel. Thank you. Mr. Molman, rebuttal argument? Actually, if you could first respond to the argument about such bond, what does that mean, each such bond? Yes. It refers to the above section. A fair and I think the only reasonable reading of the statute would be that it refers to the bond that is required in the first sentence of Section 1. But that sentence says that all public entities must require a bond from every contractor. So, therefore, the statute contemplates multiple hundreds, thousands of bonds for every single public project. So, therefore, with the third paragraph when it says each such bond, it refers to all the bonds that are provided for public projects as set forth in the first sentence of the Act. It does not limit it to a payment bond because the term payment bond is not stated in the Act at all. So, Mr. Martinovich's interpretation cannot hold water because the Act does not refer to a payment bond but does refer to multiple bonds that would be issued pursuant to that Act. The second issue that I'd like to address relates to the infrastructure agreements. The court was correct in finding that the language in the infrastructure agreements set forth the amounts of the bonds. There's a formula for the amounts. That would be 110% of the insufficient amount. The insufficient amount is the difference between the total estimated cost and what would be paid for by the SSAs. And based upon that formula, Newman provided bonds in the amount of $18 million. If they provided bonds for the entire cost, it might have been twice that amount, $40 million. But it doesn't matter whether the bonds were $18 million or $40 million. Their claim is only for about a quarter of a million dollars. The most important issue, though, is whether these infrastructure agreements would have adversely impacted the ability of Lake County Grading to have asserted a claim under the bonds. And we respectfully say that those agreements are totally irrelevant to Lake County Grading's rights. The bonds do not reference the infrastructure agreements in any manner. They don't incorporate the terms of the infrastructure agreements. And, in fact, the infrastructure agreements were executed at an entirely different time period than when the bonds were issued. The rights of Lake County Grading to assert claims under the bonds are determined by the language of the bonds and the statute. Do you believe that Arden was wrongly decided? On the narrow issues of Arden, no, because we're assuming that no bond was submitted. And so, therefore, there was a breach of that third-party beneficiary obligation that the public entity had in providing a bond for the benefit and for the protection of the claimant. Because there was no payment bond there, and you're saying there was a payment bond here based upon the language of the statute. Yes, that the Village of Andiac satisfied its obligations to a third-party beneficiary in obtaining bonds that gave them rights to assert claims that they didn't get paid. Once those bonds were obtained and the bonds gave rights to Lake County Grading to assert claims because of the language of the statute that is incorporated into the bonds, Andiac satisfied in full its obligations to Lake County Grading. And for those reasons, we are asking that the court reverse the judgment that was entered by the trial court and enter summary judgment in favor of the Village of Andiac for fulfilling its obligations in obtaining bonds that, in fact, protected Lake County Grading. Thank you, counsel. Thank you. I'd like to thank both attorneys for their arguments. The case will be taken under advisement, and we'll take a short recess.